UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

GLENDA SUTTON,                            :
                                          :
                 Plaintiff,               :        Hon. Dennis M. Cavanaugh
                                          :
      v.                                  :        **OPINION**
                                          :
JO ANN B. BARNHART                        :        Civil Action No: 05-2462
COMMISSIONER OF SOCIAL                    :
SECURITY,                                 :
                                          :
                 Defendant.               :
                                          :

---

**DENNIS M. CAVANAUGH, U.S.D.J.:**

        This matter comes before the Court upon the appeal of Glenda Sutton ("Plaintiff") from

the Commissioner of Social Security Administration's ("Commissioner"), final decision denying

her request for Supplemental Security Income benefits ("SSI").  This Court has jurisdiction to

review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  This matter is decided

without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  As detailed

below, it is the finding of this Court that the Commissioner's decision is not based on a complete

analysis supported by substantial evidence.  Accordingly, the Commissioner's decision is

remanded for further proceedings consistent with this ruling.

## I.  Background

### A.  Procedural history

        Plaintiff, alleging disability from severe physical and mental impairments, challenges the

denial of SSI disability benefits protectively filed on June 12, 2001. (R. at 48-62).  Plaintiff's

current application before the Court is considered a request to open an earlier application she

filed on May 30, 2000. (Record "R." at 277-82).  The claim was initially denied on May 18,

2002. (R. at 27-32).  Plaintiff appealed, and on reconsideration the claim was again denied on

July 21, 2003. (R. at 35-8).  On September 22, 2003, Plaintiff appealed, requesting a hearing

before an Administrative Law Judge ("ALJ").  (R. at 39).  The hearing was held on June 14,

2004, in Newark, New Jersey, before the Honorable Marilyn Mann Faulkner, U.S. A.L.J.  (R. at

317-63).

The ALJ denied the Plaintiff's claim, finding she was not disabled under the Social

Security Act. (R. at 14-24).  On August 3, 2004, Plaintiff sought Appeals Council review of

Judge Faulkner's decision. (R. at 12-3, 313-16).  On March 9, 2005, the  Appeals Council denied

review, making the ALJ's ruling the Commissioner's final decision.  (R. at 6-9).  Plaintiff then

filed this timely action before the District Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### B.  Factual History

Plaintiff was born in Lumberton, North Carolina on February 15, 1956.  (R. at 48-49, 276,

322).  She now lives in Jersey City, New Jersey, in a fourth-floor apartment.  (R. at 331).  She is

unemployed and receives food stamps and $210 a month in General Assistance.  (R. at 331).

Plaintiff does not have a high school diploma or a GED, and her work history is sparse.  (R. at

324, 327-30, 352).  Her last job was in 1997, where she worked as a security guard at the

courthouse in Jersey City. (R. at 305).  She was not allowed to return after she injured herself on

the job.  (R. at 305, 326-7).  In the 1980s, Plaintiff worked as a knitting machine operator in

Miami, Florida.  (R. at 305).  Both of these jobs required standing for extended periods of time,

and at the knitting factory she was required to lift heavy rolls of material weighing from fifty to

one hundred pounds.  (R. at 328-9).  Plaintiff currently relies on her boyfriend to assist her with

household maintenance and shopping.  (R. at 73-9, 83-5).

### 1.  Medical Evidence Pertaining to Plaintiff's Physical Impairments[1]

Plaintiff testified that she suffers from arthritis of the right knee and hand; disorders of the back; hypertension; asthma; and depression.  (R. at 18).  Both a car accident, and a subsequent fall contributed to these physical impairments. (R. at 331-2, 343-4).

Dr. Parikh, Plaintiff's treating physician, diagnosed Plaintiff with right knee arthritis, hypertension, and gastritis.  Medical records dating from November 1999, to December 2002, demonstrate bilateral joint space narrowing of the knees; an MRI showing joint effusion; and an x-ray of her spine that was normal. (R. at 201, 203).  Dr. Parikh opined that Plaintiff was able to carry up to ten pounds.  (R. at 196-7).  Although Dr. Parikh did not give his medical opinion as to whether she was capable of working or not, he did suggest Plaintiff could sit for about six hours a day.  (R. at 163, 196-7, 254).  To address her mental impairments Plaintiff is undergoing a pharmacological course of treatment.  (R. at 196).

Dr. Merlin, a consultative examiner who saw Plaintiff on April 2, 2000, and October 27 2001, reported Plaintiff had arthritis in her left hip, high blood pressure, and asthma.  (R. at 133). He determined that while Plaintiff suffered from hip pain, hypertension, and peptic ulcer disease, all of these conditions were stable.  (R. at 134-5).  However, he did find that her lower back condition, was not stable.  (R. at 151).  Dr. Merlin determined that Plaintiff was able to conduct

---

[1] The ALJ's conclusions regarding Plaintiff's physical impairments were supported by substantial evidence, and Plaintiff does not dispute these findings on appeal. There also seemed to be substantial evidence of Plaintiff suffering from a substance abuse disorder. (R. at 242, 245, 252).  However Plaintiff does not argue this point on appeal, so it is not within the purview of this court to review the issue. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001); Rowan v. Barnhart, 67 Fed. Appx. 725, 728.  Plaintiff argues that the ALJ failed to properly consider her mental impairments at steps two and three, and at step five of the administrative review process. (PB at 7-8).  A summary of the medical evidence regarding physical impairments is included nonetheless in Section I(B)(1) because step two and three of the administrative review process requires the ALJ to combine the claimant's mental and physical impairments in determining whether a plaintiff is severely impaired (step two) or she is per se disabled (step three).

work related activities so long as the work environment did  not expose her to dust, fumes, or extreme temperatures  and she did not have to lift or carry heavy objects. (R. at 135, 157).

Plaintiff  visited the emergency room ("ER") at the Jersey City Medical Center on October 3, 1999, and March 4, 2001.  (R. at 2).  She complained of hip and chest pain during her first E.R. visit and at  the second visit she complained of pain in her hips and buttocks. (R. at 147).

Dr. Rao saw Plaintiff on February 20, 2001, when she complained of pain in her lower back.  (R. at 139).  The doctor observed that she had a limited range of motion, and noted sciatic notch tenderness.  (Id.).  Plaintiff had x-rays taken, which indicated that her spine and hips were normal. (R. at 140).

On February 18, 2002, Plaintiff underwent a Physical Residual Functioning Capacity Assessment by Dr. Feman.  (R. at 162-8).  He determined Plaintiff had certain postural and environmental limitations.  (R. at 164, 166).  Dr. Cooper conducted an additional Physical Residual Functioning Capacity Assessmenton July 21, 2003.  (R. at 253).  His conclusions were similar to those of Dr. Feman, and he noted Plaintiff's exertion and environment limitations.  (R. at 255-56).

Dr. Sreedevi Menon performed an internal medicine examination of Plaintiff on July, 9, 2003.  (R. at 246).  He noted that Plaintiff was at the time on seven medications: Diovan HCTZ; Nexium; Aplrazolam; Amitriptyline; Bextra; Premarin; and an Albutero asthma inhaler.  (R. at 246-47).  In his musculoskeletal evaluation, he noted swelling of Plaintiff's arthritic right hand, and a range of motion deficiency in the right knee.  (R. at 248).  Dr. Menon diagnosed Plaintiff with arthritis of the right knee and hand; history of lower back pain; and hypertension.  He also found Plaintiff moderately limited in activities that required exertion.  (R. at 249).

### 2.  Medical Evidence Pertaining to Plaintiff's Mental Impairments

Medical records dating from November 1999, to December 2002, completed by Dr. Parikh, Plaintiff's treating physician, indicate that in addition to Plaintiff's physical disorders, she was also being treated for depression.  (R. at 195).  In response to Plaintiff's complaints, Dr. Parikh prescribed medication to treat her emotional and mental impairments. (R. at 196).

Dr. Santa A. Gregory, conducted a psychological assessment at counsel's request on March 28, 2002.  (R. at 171).  He observed that Plaintiff was in the low average range of general intellectual ability, abstract verbal reasoning, and verbal concept formation.  (R. at 173).  She was within the borderline range in assessing spatial visualization, visual-motor coordination, and abstract conceptualization.  (Id.).  Plaintiff has difficulties with her dieting and sleeping patterns, which become particularly exacerbated at times.  (R. at 173).  Dr. Gregory concluded that in complex, variable, or emotional situations, Plaintiff will likely respond in an impulsive manner marked by poor judgment.  (R. at 175).  Plaintiff underwent a court ordered anger management course.  (R. at 174).  Additionally, Plaintiff's social aptitude is hindered by feelings of social isolation and weakness, and her boyfriend's interference in her relationships.  (R. at 174-75).  Dr. Gregory concluded that as a result of an affective disorder, Plaintiff lacks energy for productive activity, has difficulty with tasks requiring attention and concentration, and is quite irritable.  (R. at 175).  These symptoms have a negative impact on her ability to work and conduct interpersonal activities. (Id.).

On June 1, 2002, a Psychological Review Technique Form was completed by Dr. Arno, who diagnosed Plaintiff with an affective disorder characterized by depressive symptoms.  (R. at 179).  He observed that she has moderate restrictions in maintaining social functioning, and maintaining concentration, persistence, or pace.  (R. at 186).  These findings were consistent with

the Mental Residual Functional Capacity Assessment he conducted on June 5, 2002.  (R. at 190).

He additionally noted that Plaintiff had moderate limitations in adapting to changes in work

settings, setting realistic goals, and understanding detailed instructions.  (R. at 191).  Dr. Arno

concluded that Plaintiff would be best suited for low contact work, and that her depression

hinders her ability to concentrate. (R. at192).  On a Psychiatric Review Technique form, he found

Plaintiff's condition was not severe enough to meet the "B" criteria for affective disorders, and

he made no finding as to the "C" criteria.  (R. at 187).[2]

On July 9, 2003, Dr. Hartman conducted a psychiatric evaluation on Plaintiff.  (R. at

241).  Plaintiff's history of depression and anxiety were noted, although she has never received

treatment from a psychiatrist or mental health counselor.  (Id.).  Plaintiff also acknowledged that

there was a high incidence of child abuse and alcoholism in her family when she was growing up.

(R. at 242).  Plaintiff currently drinks a six-pack of beer every day as a form of self-medication.

(Id.).  Plaintiff's affective disorder is characterized by sadness, motor slowness, crying spells,

social isolation, hopelessness, loss of interest, irritability, agitation, low self esteem, very low

energy, mild memory problems, and concentration deficiency.  (Id.).  Plaintiff reported she

attempted suicide in the 1970s, and that she is very easily overwhelmed by the minor stressors in

life.  (R. at 242-43).  Dr. Hartman stated Plaintiff could understand simple directions and

instructions, but her social functioning and concentration were moderately limited, which could

impact her vocational capacity.  (R. at 244).  The doctor recommended Plaintiff receive

individual psychological therapy and alcohol rehabilitative treatment.  (R. at 245).

An additional Mental Residual Functional Capacity Assessment and Psychiatric Review

Technique form were completed by Dr. Apacible on July 7, 2003. (R. at 250).  His assessment of

---

[2] As discussed in Section III(B), Plaintiff can be found disabled at the third step of the analysis if she either meets the criteria for parts A and B, or part C of section 12.04 of the Listing of Impairments.

Plaintiff's limitations were similar to that of Dr. Arno, with both concluding Plaintiff has

moderate restrictions in maintaining social functioning; maintaining concentration, persistence,

or pace; adapting to changes in work settings; and, understanding detailed instructions.  (R. at

250-51).  Plaintiff appears to be low average to borderline range in intellectual functioning.  (R.

at 252).  To cope with her pain and depression Plaintiff consumes a six-pack of beer a day.  (Id.)

Dr. Apacible concluded that Plaintiff, although limited, was not disabled and could perform a job

with simple tasks. (Id.)  He also diagnosed her with a substance addiction disorder.  (R. at 258).

On his Psychiatric Review Technique form, he found Plaintiff did not meet the "B" or "C"

criteria for affective disorders. (R. at 268-9).

## II.  Discussion

### A. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are

supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993).

"Substantial evidence" means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389,

401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id.  Some types of evidence will not be "substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is overwhelmed by other evidence –
> particularly certain types of evidence (e.g. that offered by treating physicians) – or
> if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent

v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to

support his ultimate conclusions.  Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir.

1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing

court] is bound by these findings, even if [it] would have decided the factual inquiry differently."

Fargnoli, 247 F.3d at 35.  Thus, substantial evidence may be slightly less than a preponderance.

Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality."

Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d

64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account

whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of

Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a

corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with

conflicting evidence, he must adequately explain in the record his reasons for rejecting or

discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987)

(citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access

to the ALJ's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ.

& Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "[The reviewing court] need[s] from the ALJ not

only an expression of the evidence she considered which supports the result, but also some

8

indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.

1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate

review of the matter; the court cannot determine whether the evidence was discredited or simply

ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter,

642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court ... is

[not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

 Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B.  The Five-Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Under the Social

Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource

limitations of 42 U.S.C. §§ 1382a & 1382b, and demonstrates that she is disabled based on an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental

impairments are "of such severity that he is not only unable to do his previous work, but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to

determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the

claimant must establish (1) that she has not engaged in "substantial gainful activity" since the

onset of her alleged disability, and (2) that she suffers from a "severe impairment" or

"combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the

burden of establishing these first two requirements, her failure to meet this burden automatically

results in a denial of benefits, and the court's inquiry necessarily ends there. Bowen v. Yuckert,

482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability

determination).

   If the claimant satisfies her initial burdens, in step three she must provide evidence that

her impairment is equal to or exceeds one of those included in the Listing of Impairments in

Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 404.1520(d). Upon such a showing, she

is presumed to be disabled and is automatically entitled to disability benefits. Id. If she cannot

so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the

analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to

resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be

capable to return to her previous line of work, then she is not "disabled" and not entitled to

disability benefits. Id. Should the claimant be unable to return to her previous work, the analysis

proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the

claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f). If the

Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.

Yuckert, 482 U.S. at 146-47 n.5. An ALJ's assessment is to be "conducted in an 'inquisitorial

rather than adversarial' manner in which 'it is the ALJ's duty to investigate the facts and develop

the arguments for and against granting benefits.'" Wallace v. Barnhart, 88 Soc. Sec. Rep Service

650 (quoting Sims v. Apfel, 530 U.S. 103, 103-4 (2000).

### III.  Analysi

**A.  The ALJ's Assessment of Plaintiff's mental impairments at Step Two**

In step two of the analysis a plaintiff must prove that she is suffering from a severe

impairment. C.F.R. § 416.920(a).  Rutherford v. Barnhart, 399 F.3d 546, 551 (3rd Cir. 2005).

This step is a screening device designed to filter out claims by plaintiffs who have merely "slight

abnormalities" that do not have even a minimal effect on basic work activities.  Yuckert, 482

U.S. at 153.  The court in Gorecki v. Massanari explained that

> [i]n determining whether an impairment is severe, step two of the five step
> analysis does not look to the specific Listing of Impairments; it only asks whether
> the impairment or combination of impairments causes more than minimal
> restrictions on the capacity for basic work activity. 20 C.F.R. 416.920. . . . [T]he
> step two "severity" criteria requires only a *de minimis* showing of impairment. A
> complete analysis of whether the person qualifies for disability is not complete at
> this point. Upon a *de minimis* showing of impairment, the evaluation proceeds to
> step three, at which point a thorough evaluation is conducted to determine if the
> claimant meets the criteria for the Listing of Impairments.

197 F. Supp. 2d 154, 160 (M.D. Pa. 2001).

Here, the ALJ determined Plaintiff's back problems, arthritis of her right knee, and

affective disorders were all "severe" in accordance with the requirements set forth in the

Regulations 20 C.F.R. § 416.920(b).  (R. at 23).  Since 20 C.F.R. § 416.920a(d)(1) serves to

assist the ALJ in determining whether a  plaintiff's impairment is severe and the ALJ found

Plaintiff's impairments to be severe, the ALJ's duty to conduct an in-depth analysis of the

claimant's impairments begins at step three.  Gorecki, 197 F. Supp. 2d at 160.

**B.  The ALJ's Assessment of Plaintiff's Mental Impairments at Step Three**

In step three, an ALJ must determine whether a plaintiff has an impairment which

meets or equals the criteria of an impairment contained in the Listings set forth at 20 C.F.R. Part

404, Subpart P, Appendix 1.  When assessing mental impairments, an ALJ must fully discuss a

plaintiff's impairments at step three of the evaluation process.  Burnett v. Commissioner, 220

F.3d 112 (3d Cir. 2000).  Albury v. Comm'r of Soc. Sec., 116 Fed Appx. 328 (quoting Burnett,

220 F.3d at 119).  The special technique set forth by the Commissioner requires an ALJ to make

a specific finding as to the degree of limitation in each of the function areas described in

paragraph (c) of section.  20 C.F.R. § 416.20(a)(e).  See also Morales v. Apfel, 225 F.3d 310, 316

fn 7 (3d Cir. 2000); Estep v. Barnhart, No. 02-CV-3998, 2003 U.S. Dist. LEXIS 20009, at *31-6

(3d Cir. Aug. 26, 2003).  The above mentioned "function areas" are: "[a]ctivities of daily living;

social functioning; concentration, persistence, or pace; and episodes of decompensation."  20

C.F.R. § 416.920a(c)(3).  Plaintiff argues that she qualifies for a psychiatric disability, under

section 12.04 of the Listings.  To meet the level of severity to be considered per se disabled,

Plaintiff must meet the requirements of subsection A and B, or the requirements of C.  Listings at

Section 12.04.

### 1. The ALJ's Assessment of Plaintiff's Impairments under the Sections A and B

In step 3, the ALJ erred by failing to fully discuss Plaintiff's ability to operate in the four

broad functional areas.  If an ALJ determines at step three that a plaintiff's impairment is listed,

or is equal to a listed impairment in the Listings, then a plaintiff is per se disabled.  20 C.F.R. §

404.1520(d).  Here, the ALJ fully explained why Plaintiff's physical impairments were not equal

to the relevant Listings, however the ALJ failed to do so in assessing Plaintiffs mental

impairments.  (R. at 20-22).  The ALJ clearly diverged from the proper evaluation method by not

rating Plaintiff in the four broad areas of functioning.  20 C.F.R. § 416.20(a)(e).  However, even

if an ALJ fails to strictly adhere to the technique, the vital inquiry remains whether her analysis

made meaningful judicial review possible.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004)

(explaining that "Burnett does not require the ALJ to use particular language or adhere to a

particular format . . . [rather, it is to insure] that there is sufficient development of the record and

explanation of findings to permit meaningful review"); see also <u>McDaniels v. Commissioner</u>, No. 04-3267, 2005 WL 135894 *1 (3d Cir. June 10, 2005).

The ALJ makes reference to the first functional area in her assessment by noting that Plaintiff's "activities of daily living were not significantly compromised." (R. at 21). The second functional area, which is social functioning, is not explicitly referred to in the ALJ's opinion. However, her findings indicate that Plaintiff was limited in her ability to maintain relationships and interacting with others.[3] (R. at 21).

In the third functional area, which includes"concentration, persistence, or pace," three of the doctors found Plaintiff to be moderately impaired. (R. at 175, 186, 250-51). Dr. Hartman found Plaintiff's attention and concentration to be only "mildly" impaired. (R. at 244). On the other hand, Dr. Gregory, concluded that Plaintiff had lapses in attention, low visual-motor coordination, and difficulty meeting time limits. (R. at 173). Plaintiff also scored low on a subtest assessing her general intellectual ability. (<u>Id.</u>). The ALJ's analysis and failure to rate Plaintiff's ability to operate in "concentration, persistence, or pace," does not provide a reviewing court the opportunity to determine if the decision was supported by substantial evidence. <u>Cotter</u>, 642 F.2d at 705 (<u>quoting</u>, <u>Baerga v. Richardson</u>, 500 F.2d 309, 312 (3d Cir. 1974). Cert. denied, 420 U.S. 931, 95 S. Ct. 1133, 43 L. Ed. 2d 40 (1975)). However, since the ALJ did not mention the doctor's findings and explain why she found one doctor's opinion carried more weight than the other three, there is no way for a reviewing court to conduct a meaningful review. There is certainly evidence in the record that could support a finding that Plaintiff did or did not suffer from a marked limitation in the functional area of "concentration, persistence, or pace." The ALJ

---

[3] The ALJ did, however, indicate that Plaintiff was limited to some degree in social functioning, and therefore restricted Plaintiff to work that required no "significant contact with co-workers, supervisors or the public." (R. at 21).

erred by not making an explicit finding either way.  Walton v. Halter, 243 F.3d 703, 710 (3d. Cir.

2001) (holding that an ALJ must make a complete analysis by indicating what evidence she

rejects and the reason for her doing so).  Even where an ALJ determines that a plaintiff does not

suffer from a marked limitation in a functional area, a judge should articulate his or her "findings

as to each prong of part 'B' in detail," allowing a reviewing court the opportunity to review his or

her decision.  Rowan v. Barnhart, 67 Fed. Appx. 725, 728.

In her brief, the Commissioner points to evidence in the record that supports the ALJ's

conclusion that Plaintiff's impairment in the third category was not "marked."  (Defendant's

Brief ("Def. Br.") at 13).  Unfortunately, this is not enough.  The ALJ must examine and consider

these records in making her findings.  Gorecki, 197 F. Supp. 2d at 154.  Here, the ALJ failed to

mention the functional area of concentration, persistence, or pace.  While the Commissioner

argues that it is possible to infer that the ALJ considered all four functional areas, it is not

appropriate to engage in post hoc rationalizations for the ALJ's decision.  Burlington Truck

Lines, Inc. v. United States, 371 U.S. 156, 168 (1962); see also Gorecki, 197 F. Supp. at 162.[4]

In Fargnoli, this Circuit noted that:

> [An] ALJ's failure to consider all the relative and probative evidence [cannot be
> rectified by a court on appeal] relying on medical records found in its own
> independent analysis, and which were not mentioned by the ALJ.  This runs
> counter to the teaching of S.E.C. v. Chenery Corporation, 318 U.S. 80, 63 S.Ct.
> 454, 87 L.Ed. 626 (1943), that "[t]he grounds upon which an administrative order
> must be judged are those upon which the record discloses that its action was
> based." Id. at 87; see also Healtheast Bethesda Lutheran Hosp. & Rehab. Ctr. V.
> Shalala, 164 F.3d 415, 418 (8th Cir. 1998) (recognizing Chenery in a case
> deciding claim for Social Security disability insurance benefits).

---

[4] In the Gorecki court's review of a similar supplemental security income benefits case, the court observes that there
is no evidence suggesting that the ALJ did not fully support his conclusions. Id at 162.  As in this case the Defendant
tried to bolster the ALJ's argument by citing to the record, and then argues that even though the ALJ himself didn't
cite to the appropriate evidence it also can be inferred that he took account of the medical evidence.  Here, the
defendant does the same thing, arguing that the ALJ's findings imply that she considered everything.  The court in
Gorecki responded to these attempts to bolster the  ALJ's opinion, stating that without a developed record, the Court
is not prepared to deduce anything.

247 F.3d at 44 n.7.

An ALJ must state her conclusions along with the factual findings that support them.

Cotter, 642 F.2d at 707.  A decision which simply states  that all the evidence was

considered is not sufficient. Id.

As to the fourth criteria "episode of decompensation," the ALJ again made no finding as

to Plaintiff's ranking in this functional area.  (R. at 18-23).  This functional area accounts for any

exacerbations in Plaintiff's symptoms as shown by alterations in medication, or the need for a

more structured psychological support system.  20 C.F.R. Part 404, Subpart P, Appendix 1,

12.04.  While the Commissioner predicts in her brief that Plaintiff will be able to fulfill the

requirements of the fourth criteria, there was evidence suggesting that Plaintiff has had increases

in her symptoms at various times in her life. ( R. at 174-75).  Plaintiff had previous experience

with suicidal impulses, repeated problems with her sleeping and eating patterns, and had once

been required to take an anger management course.  (Id.).  Even if Plaintiff's symptoms are not

severe enough to fulfill the criteria for part C, the ALJ must conduct a complete analysis, which

she failed to do here. Barnhart, 364 F.3d at 503.

Here the ALJ did not adequately develop the record and did not correctly apply the laws

and regulations.  Accordingly, this Court remands the case to the Commissioner for further

proceedings.  Melkonyan v. Sullivan, 501 U.S. 89, 101 (1991); Andrade v. Secretary of Health

and Human Servs., 985 F.2d 1045. See 20 C.F.R. 416.920a.

### 2. The ALJ's Assessment of Under Section "C"

If a plaintiff's impairment does not meet all the requirements of sections "A" and "B,"

she can still be found per se disabled at step three if she is able to meet the "C" criteria of Listing

12.04. 20 C.F.R.  Listing.  The ALJ however did not mention Section "C" in her opinion.  The C

criteria requires:

> Medically documented history of a chronic affective disorder of at least 2 years'
> duration that has caused more than a minimum limitation of ability to do basic
> work activities, with symptoms or signs currently attenuated by medication or
> psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease that has resulted in such marginal adjustment that even a
> minimal increase in mental demands or change in the environment would be
> predicted to cause the individual to decompensate, or
>
> 3. Current history of 1 or more years' inability to function outside of a highly
> supportive living arrangement with an indication of continued need for such an
> arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04.

Based on the evidence provided by both consultative and treating physicians, Plaintiff could meet

the base requirements for C.  Furthermore, it is possible that Plaintiff could have met the second

or third elements, C(2) and (3).  (R. at 175, 243-45).  If an ALJ finds the relevant evidence does

not meet C's threshold, or is not credible,  then she must make that determination in a manner

that can be subjected to meaningful judicial review.  Gober, 574 F.2d at 776.  Here, the ALJ did

not mention the possibility that Plaintiff could have had a Listing-level affective disorder

impairment under 12.04 by fulfilling the elements of Section C.  From the ALJ's opinion it is

unclear whether she simply ruled against Plaintiff in regard to Section C, or if she failed to

consider the Section entirely.  On remand the court  must insure that Plaintiff's impairments were

properly considered at step three.  Burnett, 220 F.3d at 121.

### C.  Did the ALJ's Hypothetical to the Vocational Expert Adequately Encompass all of Plaintiff's Impairments?

If a claimant is unable to prove at the third step that her impairments equal or exceed a

listed impairment, the ALJ next must determine if the claimant is capable of returning to her past

work. 20 C.F.R. § 404.1520(e).  Here, the ALJ concluded that Plaintiff was "unable to perform

any of her past relevant work," and therefore proceeded to step five of the analysis.  (R. at 24).

At  step five, the burden shifts to the Commissioner to demonstrate the claimant can perform

other substantial, gainful work. 20 C.F.R. § 404.1520(f).

In order to make this assessment, the ALJ enlisted the assistance of a vocational expert

("VE").  (R. at 23).  The ALJ asked the VE what jobs a person with the claimant's Residual

Functioning Capacity could perform by proposing a hypothetical that included Plaintiff's

impairments.  (R. at 24).   "A hypothetical question must include all of a claimant's impairments

that are supported by the record; otherwise the question is deficient and the expert's answer to it

cannot be considered substantial evidence.  Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.

1987) (citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984) and Wallace v. Secretary, 772

F.2d 1150 (3d Cir. 1983)).

Here, the ALJ asked what jobs would be available to a claimant who was capable of

sedentary work involving "simple repetitive work with low contact with coworkers and no

contact with the public, and restrictions on using her right dominant hand on a repetitive basis."

(R. at 23).  While the ALJ's restrictions to sedentary work and to the limited use or her right hand

took Plaintiff's exertional limitations into account, the requirements that the work be "simple"

"repetitive" and "low contact" did not adequately encompass her mental limitations.  Plaintiff is

also limited in her pace and intellect, and is easily frustrated over normal and minor life

17

stressors.[5]  (R. at 173, 175, 243-44).  In Burns v. Barnhart, the Third Circuit held that a

hypothetical very similar to the one used by the  ALJ's here was deficient because it merely

suggested that the claimant could perform "simple repetitive one, two-step tasks." 312 F.3d 113,

123 (3d. Cir. 2002).  As the Burns Court explained, the phrase that the ALJ used did not account

for the claimant's poor judgment, borderline intellectual functioning, disassociation, difficulties

in comprehension, or his oppositional tendencies.  Id. at 123.  These same characteristics were

noted in regard to the claimant here, therefore the hypothetical is similarly inadequate.  (R. at

173-75, 191).  The ALJ either must include these limitations in her hypothetical, Walton, 312

F.3d at 123, or she must reject the evidence of these impairments, and state her reasons for doing

so.  Burns, 243 F.3d at 710.

Additionally, the record overwhelmingly supports a finding that Plaintiff has moderate

deficiencies in concentration, persistence, or pace.  The Third Circuit has held that such a finding

must be included in an ALJ's hypothetical to a VE.  Ramirez, 372 F.3d 552-4 (3d Cir. 2004).  If

the ALJ determined that Plaintiff's impairment was less than moderate, than she gave more

weight to the opinion of one doctor than she did to the other three.[6]  (R. at 175, 186, 250-51).

One piece of evidence is not sufficient to constitute substantial evidence, if there is conflicting

---

[5] Social Security Ruling 85-15 specifically notes that "Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the [Residual Functioning Capacity Assessment]."  The ALJ hypothetical here did not include her limitations in reacting and coping with the mental and emotional demands of working.  Although Social Security Rulings ("SR") do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration (SSA) in accordance with section 402.35(b)(1) of the Social Security Administration Regulations (20 CFR Part 402), and are to be relied upon as precedents in adjudicating other cases. SR 85-15 (September 7, 1978). Ramirez v. Barnhart, 372 F.3d 546, 552. Allen, 417 F.3d at 405-6.  For a complete discussion on the requirements of an ALJ's hypothetical, and the positions of various circuits, see Ramirez, 372 F.3d 553. (comparing the holdings of the Third, Sixth, Seventh, and Eight Circuit Court of Appeals).

[6] As explained in section III(A)(1), the ALJ did not make any finding as to Plaintiff's limitation in this aspect of her ability to function.  Three of the four doctors who evaluated the plaintiff here found that she had "moderate" difficulties in "concentration, persistence, or pace." (R. at 175, 186, 250-1).  One doctor thought her restriction in this area was only "mildly" limited. (R. at 244).  Because the ALJ made no finding, and the evidence suggests that Plaintiff's deficiency was indeed "moderate," it is even more significant that this limitation was not included in the hypothetical.

countervailing evidence that the ALJ has failed to resolve.  Wallace v. Sec'y of Health & Human

Servs., 722 F.2d 1150, 1153; Versace v. Barnhart, No. 01-civ-3909, 2002 U.S. Dist Lexis 15340,

at *2 (E.D.Pa. Aug. 14, 2002) (holding that when the ALJ omits one of the claimant's medical

impairment, and the rest of the evidence does not support the ALJ's conclusion, the omission

constitutes reversible error).  If a hypothetical does not include deficiencies in concentration,

persistence, or pace, Plaintiff may not be able to meet certain daily production quotas, and this

could impact the number and types of jobs that Plaintiff is capable of performing.  Ramirez, 372

F.3d at 554; see also SR 96-08p (July 2, 1996) (noting that step five of the disability analysis

requires a "detailed assessment" of the claimant's mental limitations).

In another case involving a plaintiff with similar mental impairments, the ALJ incorrectly

measured the jobs available in the national economy because in his hypothetical to the VE, he

failed to include the limiting effects of the plaintiff's depression and inability to concentrate.

Matthews v. Massanari, No. 00-5950, 2001 U.S. Dist. Lexis 25042, at *13 (E.D.Pa. May 21,

2001).  The Third Circuit has also recently held that a vague hypothetical that limited a plaintiff

to "simple, routine, repetitive work," was insufficient to provide the reviewing court with an

understanding of what conclusions the ALJ came to regarding the plaintiff's Residual

Functioning Capactiy.  Allen v. Barnhart, 417 F.3d 396 (3d Cir. 2005).  Because the hypothetical

posed to the VE did not account for all of Plaintiff's medically established impairments, the VE's

response did not constitute substantial evidence.  Ramirez, 372 F.3d at  555.  In this case, the

ALJ's findings at step five are therefore not supported by substantial evidence and the case must

be remanded for further proceedings consistent with this Opinion.  Richardson v. Perales, 402

U.S. 389, 410 (1971); Alexander v. Shalala, 927 F.Supp 785, 791 (D.N.J 1995).

19

**IV.  Conclusion**

       The ALJ did not properly evaluate the severity of Plaintiff's mental impairments at step

three of the five step analysis.  Additionally, the hypothetical provided to the VE at the fifth step

of the process was insufficient.  On remand, the ALJ should conduct a thorough analysis at step

three to determine whether Plaintiff's impairments meet or exceed any of the Listed impairments.

If at step three Plaintiff is not determined to be disabled, the analysis continues to steps four and

five.  In the final step, the ALJ must provide the VE with a hypothetical that adequately conveys

all of Plaintiff's credibly established impairments.

       The Court remands the ALJ's disability determination for further proceedings consistent

with this Opinion.  An appropriate Order accompanies this Opinion.


                             S/ Dennis M. Cavanaugh
                            Dennis M. Cavanaugh, U.S.D.J.

Date:      June 22, 2006
Original:  Clerk's Office
cc:        All Counsel of Record
             File